**John SCHULTE, Relator,**

v.

**TRANSPORTATION UNLIMITED, INC.
and Commissioner of Economic
Security, Respondents.**

No. C8–83–1072.

Supreme Court of Minnesota.

Sept. 21, 1984.

Valerie J. Bogart, Minneapolis, Minn., for relator.

Transportation Unlimited, Inc., pro se.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, St. Paul, for respondents.

TODD, Justice.

Jon Schulte filed for and received unemployment compensation after being discharged by Transportation Unlimited, Inc. He received benefits from September 25, 1982 to February 5, 1983 when he returned to work. On February 3, 1983 Schulte received a notice of appeal by Transportation Unlimited, Inc. which he ignored since he was returning to work. In May of 1983 Schulte again was unemployed. He sought benefits which were denied because of a determination in the prior appeal that he was not entitled to benefits. Schulte appealed the denial of benefits and sought to reopen the prior proceedings. The commissioner denied the appeal. We reverse.

Schulte was employed by Transportation Unlimited, Inc., a truck leasing company, from August 1981 until September 25, 1982 as an over-the-road truck driver. Schulte was based in Minneapolis but received his assignments from a company client, the Firestone Company. He was discharged by Transportation for allegedly logging in his log book in a manner not in compliance with Department of Transportation regulations. Schulte argued at the hearing that this practice was not only condoned but expected of drivers so they could circumvent regulations which made trucking less profitable.

Schulte was determined eligible to receive unemployment compensation benefits on October 21, 1982. He received benefits for four months until February 5, 1983 and then returned to work. In the meantime Schulte's Ohio employer appealed and Schulte received a notice for a hearing in Ohio on February 3, 1983 (scheduled for the employer's convenience) and one in Minnesota on March 30, 1983. Since Schulte had returned to work he saw no need to attend either hearing. The appeal tribunal, in Schulte's absence, reversed the determination of the claims deputy, and concluded Schulte was discharged for misconduct. Schulte, again, saw no need to continue these proceedings and, therefore, did not appeal since he was gainfully re-employed.

In May 1983, Schulte again became unemployed and applied for benefits. The Department of Economic Security sent him a Notice of Overpayment on June 1, 1983 which stated that he owed the unemployment compensation fund $3,312.00 for all benefits erroneously paid to him. The notice also stated that his new benefits would be withheld until this amount was fully recovered. This is undisputably the first time Schulte received a notice regarding liability for an overpayment.

On June 8, 1983, Schulte appealed the overpayment notice as allowed by Chapter 268 and additionally requested a reopening of the appeal tribunal hearing on the merits.

On July 14, 1983, the commissioner denied Schulte's request to reopen because it was not made within the statutory time limit for appeals, Minn.Stat. § 268.10, subd. 5 (1982), and dismissed the appeal for lack of jurisdiction. Schulte seeks a reversal of this decision and a remand for a de novo hearing before the appeal tribunal.

Schulte maintains he was inadequately notified of the consequences for failing to follow up subsequent appeals reversing an initial determination of eligibility for benefits. He argues the notice apprising him of an appeal is constitutionally defective unless it meaningfully describes what is at stake if the initial decision is reversed. The notice, he contends, should contain language advising persons that a reversal will result in automatic liability for repayment of benefits previously paid and received.

The issue presented is whether a discharged employee is denied due process of law when a notice reversing a grant of unemployment benefits fails to apprise him that he would be liable for benefits previously paid and any repayment required would be charged against future unemployment claims.

Two notices are involved in this dispute and are subject to this discussion. The first is the notice that an appeal to the appeals tribunal was being taken from the determination made by the claims deputy. The second is the notice of determination by the appeals tribunal stating that Schulte could appeal its reversal of the claims deputy. Neither notice informed Schulte that as a consequence of this reversal he would be required to repay benefits previously paid, although Minn.Stat. § 268.10, subd. 2(1) (1982) provides that if a determination favorable to relator is reversed on appeal "any benefits paid under the award of such initial determination * * * shall be deemed erroneous payments." Minn.Stat. § 268.-18, subds. 1, 4 (1982) authorize the commissioner to collect overpayment by civil action or by deducting future unemployment compensation benefits payable to an individual within a six-year period.

■ Unemployment benefits are an entitlement protected by the procedural due process requirements of the fourteenth amendment. *See Ross v. Horn*, 598 F.2d 1312, 1317–18 (3d Cir.1979), *cert. denied*, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *Graves v. Meystrik*, 425 F.Supp. 40 (E.D.Mo.1977), *aff'd mem.*, 431 U.S. 910, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977). Having determined in this case that due process applies, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

■ The individual's interests and the agency's interests must be balanced in each case to determine whether due process requires additional or different procedures. *See generally*, Marshaw, J., *The Supreme Court's Due Process Calculus for Administrative Adjudication in Matthews v. Eldridge: Three Factors in Search of a Theory of Value*, 44 U.Chi.L.Rev. 28 (1976). Adequacy of the notice is challenged here. Schulte argues that knowledge of what is at stake is needed to make an intelligent decision as to whether it is worth the time and effort to attend appellate hearings. In support of this proposition he quotes *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) which held:

This right to be heard has little reality or worth unless one is informed that the matter is pending *and can choose for himself whether to appear or default, acquiesce or contest.* * * * An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * The notice must be of such nature as reasonably to convey the required information * * * and it must afford a reasonable time for those interested to make their appearance. * * *

*Id.* at 314, 70 S.Ct. at 657 (emphasis added and citations omitted).

The cryptic due process language underscored above is relied upon by Schulte to establish that the consequences of proposed governmental action must be communicated so that a person knows whether to "appear or default, acquiesce or contest." Without knowing the specific consequences of proposed governmental action, a person cannot make an informed choice. One federal court addressed the adequacy of notice in the context of the federal food stamp program. *Willis v. Lascaris*, 499 F.Supp. 749 (N.D.N.Y.1980). In *Willis*, a county department of social services proposed to reduce the amount of food stamps to all recipients since a public assistance heat allowance was being given to the recipients. The notice to the recipients stated the above information and notified them that a hearing could be requested. *Id.* at 751. Finally, the notice alluded to the possibility that free legal advice might be available. *Id.*

The principal challenge to the notice was that it violated due process since it failed to state the amount, if any, a food stamp recipient's allotment would be reduced. The notice also did not contain sufficient information to enable recipients to appreciate whether the department's computation of their food stamp allotment, upon adding the heat allowance, was accurate. *Id.* at 753. Analyzing the notice given, the court followed and quoted the balancing test enunciated in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970):

> [t]he extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss," *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we said in *Cafeteria & Restaurant Workers Union, v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), "consideration of what procedures due process may

require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."

499 F.Supp. at 755 (citing 397 U.S. at 262–263, 90 S.Ct. at 1017–1018.)

The *Willis* court acknowledged that this test was "stated slightly differently" in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). 499 F.Supp. at 756. Transportation argues *Mathews* applies only to determine whether a hearing is necessary and not to whether the notice given is sufficient. *Willis* makes clear that *Mathews* is merely a reformulation and clarification of *Goldberg* and applies to determine the sufficiency of a notice. The *Mathews* court stated:

> More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. At 334–35, 96 S.Ct. at 902–03.

Applying *Goldberg* and *Mathews*, the *Willis* court held that the *"interest at stake* in the notice requirement is directly related to the due process guarantee of an opportunity to be heard." 499 F.Supp. at 756 (emphasis added). The opportunity to be heard also must be tailored to the capacities and circumstances of those who are to be heard. *Id.* at 756 n. 13. Examining each case, the *Willis* court capsulized what the *Goldberg* and *Mathews* cases require:

> *Goldberg's* requirement of a "detailed notice" and the *Mullane* Court's dedication to the principal of an informed

choice, have been translated by the lower courts into a shield by which public assistance recipients are able to protect their "opportunity to be heard."

*Id.* at 757.

The *Willis* court concluded that plaintiffs would be irreparably harmed if they were not given a meaningful notice to explain how and why their food stamp allotment was being reduced. The commissioner in *Willis* contended that since few households ever asked for hearings, plaintiffs as a class did not believe they were harmed. The court noted, however, that this lack of inquiry reflected the confusion created by the uninformative nature of the notice and the "resulting inability of the food stamp recipient to *appreciate its meaning.*" *Id.* at 759 (emphasis added).

■ *Willis* turns upon the notice communicating the "interests at stake." It admonishes that notice is constitutionally defective if it does not meaningfully inform persons so that they can protect their interests. Whether the notice enables a person to make an "informed choice" is critical in analyzing its adequacy under the due process clause. *See also Dilda v. Quern,* 612 F.2d 1055, 1057 (7th Cir.1980), *cert. denied* 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980).

Schulte's argument, in light of *Willis,* is compelling. What need is there for a person who has received benefits when needed and who subsequently finds another job to take time off from a new job to attend a hearing on a question that is ostensibly moot to the claimant? That person may rationally believe that he has already benefitted from the program and, since future benefits are not needed, there is no reason to attend another hearing. Unless that person knows the consequences of a reversal of an initial decision awarding benefits, the motivation to appear at a later hearing is nonexistent. Accordingly, to be constitutionally sufficient, the notice must communicate the interest at stake—that a reversal means the recipient has been overpaid and repayment is required.

A similar argument was made by an employer against an employment security administration that increased the employer's experience rating when the employer failed to file a timely appeal. *See Ottenheimer Publishers, Inc. v. Employment Security Admin.,* 340 A.2d 701 (Md.1975). In *Ottenheimer,* the employer was sent a "Nonmonetary Determination" notice which stated that the claimant/employee was disqualified for benefits. The notice also had a section labelled "Appeal Rights" and indicated the last date in which an appeal could be filed. *Id.* at 702–03. After expiration of the appeal period, Ottenheimer received a notice that two payments had been made to the employee and that these were being charged to Ottenheimer's experience rating account. Ottenheimer complained and eventually appealed, raising the merits of the employee's claim and the adequacy of the "Nonmonetary Determination" notice. *Id.* at 703. The Maryland high court agreed, stating:

Given the tenor of the notice that the claimant was disqualified and benefits denied, the single sentence which was supposed to limit the period of disqualification, itself confusing, was hardly sufficient to alert the employer to the possibility that benefits would be paid in the future and that failure to appeal within seven days could lead to its Experience Rating Account being charged for any benefits paid. Where there is a statutory requirement of notice, the notice must contain such information and be presented in such a manner so as to "enable a person of ordinary perception to understand the nature and purpose of the notice." * * * The notice in the instant case did not meet this test.

We have often stated that administrative agencies "must observe the basic rules of fairness as to parties appearing before them." * * * Even if there were no specific statutory requirement of notice, this principle would seem to require that adequate notice and opportunity to be heard be afforded in a case such as this. The Nonmonetary Determination

notice failed to provide this element of fundamental fairness.

*Id.* at 704–05 (citations omitted).

 Applying these considerations to the facts of this case we conclude that the notice in question is affirmatively misleading and results in a denial of due process under both the state and federal constitutions. The defect in this case is the failure to inform the employee that a reversal of the decision awarding him unemployment benefits will result in a charge against his right to collect future benefits. We therefore remand the case for a de novo appeal tribunal hearing on the merits of Schulte's eligibility.

Reversed.

KELLEY, J., took no part in the consideration or decision of this case.