Larry I. **CHARSON**, Appellant,

v.

**TEMPLE ISRAEL**, Respondent.

No. C6–86–2087.

Court of Appeals of Minnesota.

May 19, 1987.

Review Granted July 15, 1987.

Alan G. Greenberg, Minneapolis, for appellant.

Richard A. Lind, Kay N. Hunt, Lommen, Nelson, Cole & Stageberg, P.A., and Leo G. Stern, Michael A. Trittipo, Fredrikson & Byron, Minneapolis, for respondent.

Heard, considered, and decided by CRIPPEN, P.J., and WOZNIAK and STONE,* JJ.

## OPINION

WOZNIAK, Judge.

Larry Charson appeals from the judgment and the order denying his motion to vacate the dismissal of his action on grounds of excusable neglect. Charson argues that his attorney had a reasonable excuse for the neglect that resulted in the dismissal. We affirm.

## FACTS

In February 1985, Charson served a summons and complaint on respondent Temple Israel. The complaint alleged breach of an employment contract and defamation. Charson's attorney, however, did not file the summons and complaint in district court. Shortly thereafter, Temple Israel served its answer on Charson and also filed it in Hennepin County District Court, together with interrogatories and a request

* Acting as judge of the Court of Appeals by ap- pointment pursuant to Minn. Const. art. 6, § 2.

for production of documents. Temple Israel received a notice from the court's filing department that the case was assigned File No. 85–4448. Charson's attorney insists that he never received notice of the filing. The case was not assigned to a judge.

Over the next several months, the parties prepared the case. The court file number appeared in the caption on the documents prepared by Temple Israel and sent to Charson's attorney, which included: (1) Interrogatories and Demand for Production of Documents, dated February 6, 1986; (2) Answers to Interrogatories, dated June 6, 1985; (3) Notice of Deposition, dated July 30, 1985; and (4) Charson's deposition transcript, dated September 23, 1985.

Charson's attorney had scheduled depositions of Temple Israel witnesses in February 1986, but cancelled the depositions. According to an affidavit from Temple Israel's attorney, Charson had fired his attorney at that time and wanted the depositions continued indefinitely. The affidavit further states that in late February 1986, Charson himself made a settlement demand which Temple Israel rejected, advising Charson's attorney that the demand was unacceptable. Temple Israel also asked Charson's attorney to have Charson respond to discovery requests and to schedule depositions. Charson, however, did not respond and made no attempt to prosecute the claims from February 1986 to August 1986. Charson apparently rehired his attorney during this time, but the record does not disclose when or under what circumstances this occurred.

Meanwhile, Hennepin County District Court had promulgated new procedures designed to implement a block assignment system for its civil cases. On April 10, 1985, Chief Judge Patrick Fitzgerald issued the following order, stating in part:

THEREFORE, IT IS ORDERED:

1. All existing cases certified ready for trial and not resolved prior to July 1, 1985, will be assigned under the block system on a random basis.

2. *Cases filed with the Court prior to July 1, 1985, but not certified ready for trial, will be assigned to a judges'*

*block at the time of the next filing activity.*

3. *Cases filed with the Court prior to July 1, 1985, but not certified ready for trial, will be activated effective July 1, 1985, for the purposes of the initial filing date. All cases activated on this date will be dismissed on July 1, 1986, unless a Note of Issue/Certificate of Readiness has been filed or the case has been continued prior to the expiration of 12 months, under Rule 41.02, Rules of Civil Procedure.*

4. The amended rules of the Fourth Judicial District will apply to all cases effective July 1, 1985, with the exception that the cases activated by the Court on its own motion will be dismissed under Rule 41.02, rather than Rule 41.01.

Order, reprinted in *Minnesota Rules of Court*, 501 (1986) (emphasis added).

Charson's attorney did not file a Note of Issue/Certificate of Readiness, and no other filing activity occurred in this case from June 1985 through July 1, 1986. Consequently, the case was never assigned to a judge. On July 2, 1986, this case was dismissed pursuant to Judge Fitzgerald's order of April 10, 1985.

On August 12, 1986, Charson's attorney filed the summons and complaint in district court in order to obtain subpoenas to depose certain of Temple Israel's employees. He then learned the case had been dismissed. On August 22, 1986, Charson's attorney brought a motion to vacate the dismissal on grounds of excusable attorney neglect under Minnesota Rule of Civil Procedure 60.02.

At the hearing, Charson's attorney admitted he knew of the new rules governing dismissal of cases filed prior to July 1, 1985. In his affidavit, he stated that he had searched his files for cases subject to dismissal under the new rule. He said no action was taken in this case because he was not aware the case had been filed with the court. Although the court file number appeared on documents prepared by Temple Israel, Charson's attorney told the court he was not concerned with the caption on the documents, but with the text.

The trial court denied the motion to vacate, explaining in an accompanying memorandum that it was clear the case had been filed by Temple Israel and that a court file number had been assigned to the case. The court found that Charson's attorney should have been aware that the case had been filed and was subject to dismissal unless either a Certificate of Readiness or a motion for continuance was filed.

## ISSUE

Did the trial court abuse its discretion in denying the motion to vacate the order dismissing the action on grounds of excusable attorney neglect?

## ANALYSIS

■ Under basic agency principles, an attorney's neglect is chargeable to the party. *Finden v. Klaas,* 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964). Notwithstanding this principle of agency, a party may be relieved from the attorney's neglect, by which the party is otherwise bound, if the party can show that it is entitled to relief under Rule 60.02, which provides in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment (other than a divorce decree), order, or proceeding and may order a new trial or grant such other relief as may be just for the following reasons: (1) Mistake, inadvertence, surprise or excusable neglect * * *.

Minn.R.Civ.P. 60.02. Although Charson's attorney argues that the case was improperly dismissed under Rule 41.02(1)[1], he moved to vacate the dismissal under Rule 60.02. This appeal turns on whether Charson is entitled to relief on grounds of excusable attorney neglect.

■ Rule 60.02 is often invoked to set aside a default judgment on grounds of excusable attorney neglect. *E.g., Finden,* 268 Minn. 268, 128 N.W.2d 748. The

Minnesota Supreme Court has stated that a trial court

> should relieve a defendant from the consequences of his attorney's neglect in those cases where defendant—
> " * * * (a) is possessed of a reasonable defense on the merits, (b) has a reasonable excuse for his failure or neglect to answer, (c) has acted with due diligence after notice of the entry of judgment, and (d) [shows] that no substantial prejudice will result to the other party."

*Id.* at 271, 128 N.W.2d at 750 (quoting *Hinz v. Northland Milk & Ice Cream Co.,* 237 Minn. 28, 30, 53 N.W.2d 454, 455–56 (1952)) (footnote omitted). Rule 60.02 relief is not limited to default judgments, however, and the same four-part test applies where a plaintiff seeks to vacate the dismissal of an action on grounds of excusable neglect. *See Sand v. School Service Employees Union, Local 284,* 402 N.W.2d 183 (Minn. Ct.App.1987), *pet. for rev. denied* (Minn. Apr. 29, 1987).

In this case, the trial court did not specifically address the four factors in determining whether relief should be granted under Rule 60.02. The court relied exclusively on the reasonableness of Charson's excuse, which was the only factor Charson presented. Charson's attorney argued that he was not aware the case had been filed and that he overlooked the file number on the documents because he was concerned with the text and not the caption. The trial court found, however, that Charson's attorney should have been aware that the case had been filed and was subject to dismissal.

■ Charson argues that he should have received some kind of notice from the district court that the case was filed by Temple Israel. He claims that the subsequent dismissal of the case, without prior notice of its filing, violated due process. His argument, however, speaks to the reasonableness of his excuse and does not raise a separate due process issue. Although Charson received no formal notice of the

1. Minnesota Rule of Civil Procedure 41.02(1) provides:
> The court may on its own motion, or upon motion of a party, and upon such notice as it may prescribe, dismiss an action or claim for failure to prosecute or to comply with these rules or any order of the court.

filing, he was put on notice by the court file number that appeared in the caption of the documents. Because Charson had not filed his case in district court, he might reasonably overlook the file number on one document. His excuse pales considerably, however, because he. failed to notice the court file number on at least four documents, including the transcript of his own deposition. Nevertheless, a weak excuse can be offset by a strong showing on the other factors. *See Guillaume & Associates, Inc. v. Don-John Co.*, 371 N.W.2d 15, 19 (Minn.Ct.App.1985).

The next factor is whether Charson has a meritorious claim. Charson failed to show, either by affidavit or other proof, that he has a meritorious claim. *See Hengel v. Hyatt*, 312 Minn. 317, 252 N.W.2d 105, 106 (1977) ("[i]f no affidavit of merit or other proof of a valid defense is provided, the motion to vacate will be denied") (citing *Vrooman Floor Covering, Inc. v. Dorsey*, 267 Minn. 318, 126 N.W.2d 377 (1964). The affidavit submitted in support of the motion to vacate the dismissal did not address the merits of the claim. The only information of record that speaks to the merits of Charson's claim is the complaint. The complaint, however, contains only the barest allegations of breach of contract and defamation. No facts are recited as to how the breach or defamation occurred. Charson has failed to present even a colorable claim of merit.

The next factor to consider is whether Charson acted with due diligence after notice of the dismissal. Charson brought his motion for relief shortly after learning of the dismissal. Clearly, he acted promptly and satisfied this requirement.

The final factor is whether substantial prejudice will result to the other party if the order is vacated. Temple Israel claims no prejudice other than delay, which by itself does not rise to the level of substantial prejudice. *See Finden*, 268 Minn. at 272, 128 N.W.2d at 751. Thus, Charson has also satisfied this requirement.

Trial courts are given much discretion in deciding Rule 60.02 motions, and their decisions will not be reversed unless that discretion is abused. *See Kosloski v. Jones*, 295 Minn. 177, 180, 203 N.W.2d 401, 403 (1973). Although the weakness of one factor may be overcome by the strength of the others, here, two of the four factors weigh heavily against Charson. His excuse is not a strong one, and his claims for breach of contract and defamation are unaccompanied in the record by affidavit or other proof of their merit.

The dissent would excuse Charson because he himself was not guilty of inexcusable neglect. However, any analysis under Rule 60.02 which seeks to distinguish between a party's conduct and the attorney's conduct is inconsistent with our system of representative litigation and ignores the principle that a party is bound by the acts of the lawyer-agent. See *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 *reh'g denied*, 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962). One purpose of the excusable neglect provision of Rule 60.02 is simply to provide an escape hatch for a party that can show it is entitled to relief and should not otherwise be bound by the attorney's conduct. Although we favor the trial of causes on their merits, we believe Charson has simply failed to show that he is entitled to relief under the rule. Under the circumstances, the trial court did not abuse its discretion in refusing to vacate the order dismissing this case.

**DECISION**

Affirmed.

CRIPPEN, J., dissents.

CRIPPEN, Judge, dissenting.

I respectfully dissent.

For any of four different reasons, we should conclude the trial court erred. Most importantly, the trial court's automatic dismissal order is a violation of due process. The trial court's decision is also subject to reversal under the Minnesota Rules of Civil Procedure, Rule 60.02 (vacation of judgments) and Rule 41.02 (involuntary dismissal of cases).

Specifically, I dissent on the grounds that appellant's attorney was not guilty of inexcusable neglect, and even if he were, Charson himself is not chargeable with his attorney's neglect. Furthermore, the record does not demonstrate sufficient prejudice to warrant the trial court's dismissal with prejudice under Rule 41.02. Finally, the fourth judicial district, in implementing the April 1985 order on dismissals, failed to provide the notice required by rule 41.02, and the notice required by the due process clause of the United States Constitution and the Minnesota Constitution.

### 1.

When a party seeks to vacate a judgment under Rule 60.02, based on excusable neglect, and if the judgment is a result of inexcusable neglect of the party's lawyer, the party is bound by the acts of counsel unless the case is one where the party:

> "(a) is possessed of a reasonable defense on the merits, (b) has a reasonable excuse for his failure or neglect to answer, (c) has acted with due diligence after notice of the entry of judgment, and (d) shows that no substantial prejudice will result to the other party."

*Finden v. Klaas,* 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964) (footnote omitted) (quoting *Hinz v. Northland Milk & Ice Cream Co.,* 237 Minn. 28, 30, 53 N.W.2d 454, 456 (1952)). In other words, although the inexcusable neglect of the attorney would call for the denial of a motion to vacate, according to a literal reading of Minn.R.Civ.P. 60.02, the Minnesota Supreme Court concluded ("in furtherance of justice, and pursuant to a liberal policy conducive to the trial of causes on their merits," *Finden,* 268 Minn. at 271, 128 N.W.2d at 750) litigants themselves are not chargeable with the inexcusable neglect of their attorney. *Id.* at 272, 128 N.W.2d at 751. The distinction between inexcusable attorney neglect and a party's inexcusable neglect has been relied upon in subsequent cases applying *Finden. See, e.g., Conley v. Downing,* 321 N.W.2d 36, 40–41 (Minn.

1982); *Kosloski v. Jones,* 295 Minn. 177, 179–80, 203 N.W.2d 401, 403 (1973); *Gunderson v. Lake County Board of Health,* 389 N.W.2d 241, 243–44 (Minn.Ct.App. 1986), *pet. for rev. denied,* (Minn. Aug. 20, 1986); *Howard v. Frondell,* 387 N.W.2d 205, 207–08 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. July 31, 1986); *Stelflug v. Benson,* 385 N.W.2d 892, 893 n. 2 (Minn. Ct.App.1986).

The second test of *Finden,* requiring that a party have a reasonable excuse for his or her neglect, must not be mistaken for a test focusing on the neglect of counsel. In other words, it is evident in prior appellate decisions that where the attorney's neglect is inexcusable, the party will nonetheless be granted relief, so long as the party's neglect is not inexcusable.

The majority here agrees that two of the four prongs of the *Finden* test (involving diligence in seeking relief and lack of prejudice) are met. The trial court's dismissal is affirmed, however, based on the majority's conclusion that appellant failed to show both "a reasonable excuse for his failure or neglect to answer" and "a reasonable defense on the merits." *See Finden,* 268 Minn. at 271, 128 N.W.2d at 750.

Even assuming that his attorney's neglect was inexcusable, the evidence does not show Charson was negligent. Charson's case was dismissed less than one and a half years after the summons and complaint were served on respondent. There is no evidence that Charson knew or had reason to know of respondent's filing, or that Charson had reason to know that his case was subject to dismissal for failure to comply with Chief Judge Fitzgerald's April 1985 order. This record does not support a finding of "inexcusable neglect." Significantly, in *Finden,* the supreme court concluded that defendant Klaas' actions did not constitute inexcusable neglect, even though evidence at trial established Klaas himself knew of the plaintiff's intent to apply for a default judgment and yet Klaas took no steps to avoid that result.[1] There

---

1. The supreme court accepted the trial court's finding that Klaas received a warning letter, but because the contents of the letter were not part

of the record, the supreme court was "unable to discern any basis for assuming [Klaas] was thereby made aware of his attorney's neglect."

is also no evidence indicating that the absence of counsel, during the time Charson fired, and before he subsequently rehired, his attorney, supports a finding of inexcusable neglect of the party.

The majority also concludes appellant failed to show a reasonable "defense on the merits." There is no evidence, however, that Charson would not survive a summary judgment motion or directed verdict. If not shown to be a fallacious claim or one defeated by an affirmative defense, the complaint states a meritorious cause of action.

### 2.

It should be noted that the *Finden* issue does not arise at all if there is excusable neglect. The trial court found appellant's counsel "should have been aware that this case had been filed and was subject to dismissal under the [April 1985] Order and was subject to dismissal under the Order." In my opinion, the trial court's finding was erroneous. It is not disputed that appellant's counsel was aware of the adoption of the rule. It is a natural consequence of that knowledge for attorneys to examine files where their complaints have been filed. I disagree that as a natural consequence of that knowledge a litigator would examine every pending file to determine whether there are indications that a defendant has caused that matter to be filed with the court administrator.

### 3.

Although the majority believes this appeal turns on whether appellant is entitled to relief under Rule 60.02, I am convinced we should apply the standard of review for an appeal from a judgment of dismissal.

Appellant has properly appealed from the judgment of dismissal under Rule 41.-02. This case was dismissed with prejudice pursuant to Chief Judge Fitzgerald's order dated April 10, 1985. The parties were not informed of the dismissal at the time the court closed the file on July 2, 1986. Appellant learned of respondent's filing and

of the subsequent dismissal in August, 1986, when appellant attempted to file the case in Hennepin County. Appellant was not able to appeal the dismissal because no judgment was entered. Thus, appellant made a motion to vacate the "order of dismissal." On September 9, 1986, the court entered judgment denying the motion to vacate and dismissing the action with prejudice. Appellant appeals from this judgment, and therefore, the judgment of dismissal is properly before us for review.

"The primary factor to be considered in determining whether to grant a dismissal with or without prejudice is the prejudicial effect of the order upon the parties to the action * * *." *Firoved v. General Motors Corporation*, 277 Minn. 278, 283, 152 N.W.2d 364, 368 (1967). A dismissal with prejudice is "certain and usually permanent," thus the prejudicial effect to the plaintiff is conclusively apparent. *Id.* The defendant has the "burden of showing particular prejudice of such a character that some substantial right or advantage will be lost or endangered if plaintiff is permitted to dismiss and reinstitute the action. Such prejudice should not be presumed nor inferred from the mere fact of delay." *Id.* at 283–84, 152 N.W.2d at 368.

Examining the prejudice issue for purposes of the *Finden* test, the majority concedes respondent would not be substantially prejudiced if appellant's suit were reinstated. Respondent's only claim of prejudice is the prejudice that would result to all parties whose cases are delayed, due to court congestion, if the April 1985 order is not enforced. Appellant is not responsible for the delays caused by the district's large caseload. Absent evidence of appellant's personal neglect in causing "unnecessary and inexcusable delays," *Firoved*, 277 Minn. at 284, 152 N.W.2d at 369, which under *Firoved* would independently warrant dismissal, neither appellant nor others

*Finden,* 268 Minn. at 271–72, 128 N.W.2d at 751. The court concluded: "Under these circumstances, it would be difficult indeed to charge

[Klaas] himself with such indifference to the proceedings as would amount to inexcusable neglect * * *." *Id.* at 272, 128 N.W.2d at 751.

in his situation should suffer the harsh remedy that has been imposed.[2]

### 4.

Dismissal of this case, under Minn.R. Civ.P. 41.02 and pursuant to the April 1985 order, is a violation of the due process clauses of the United States Constitution and the Minnesota Constitution. "No person shall * * * be deprived of life, liberty or property without due process of law." Minn. Const. art. I, § 7. *See also* U.S. Const. amend. XIV, § 1.

Due process fundamentally means notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Schulte v. Transportation Unlimited, Inc.*, 354 N.W.2d 830, 832–34 (Minn.1984). In *Mullane* the Supreme Court held:

> This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.

*Mullane*, 339 U.S. at 314, 70 S.Ct. at 657.

However laudatory the purpose of the order, the effort to automatically discharge proceedings is abhorrent to the constitutional right to due process. There is no precedent for dismissal of a cause of action or of a defense according to an automatic process of the court. No matter how frivolous a complaint, or how evident an affirmative defense, a proceeding may not be dismissed without a motion, notice of the motion and an opportunity to be heard.[3]

Furthermore, Rule 41.02 expressly contemplates notice. Rule 41.02 provides:

> The court may on its own motion, or upon motion of a party, and upon such notice as it may prescribe, dismiss an action or claim for failure * * * to comply with * * * any order of the court.

Minn.R.Civ.P. 41.02(1). There is no precedent indicating the court may "prescribe" that there be no notice at all. While attorneys, including appellant's lawyer, were aware of the order, no notice was given as to the specific cases subject to the order, and no notice was given as to the effect of a defendant filing prior to the plaintiff.

The April 1985 order is a denial of due process under both the federal and state constitution. Here, and in similar cases, Minnesota citizens may suffer tragedies as a result of the case management device adopted by the trial court.

affirmed the dismissal of appellant's action, commenced six years prior to the dismissal, holding:

> On this record we are unable to say that the District Court's dismissal of this action for failure to prosecute, as evidenced only partly by the failure of petitioner's counsel to appear at a duly scheduled pretrial conference, amounted to an abuse of discretion.

*Id.* at 633, 82 S.Ct. at 1390. It is apparent that the Supreme Court did not condone the automatic dismissal of cases, and did not consider and endorse the constitutionality of such a rule. The Court in *Link* expressly relied upon the notice that was inherent in the circumstances presented by that case:

> The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct. The circumstances here were such as to dispense with the necessity for advance notice and hearing.

*Id.* at 632, 82 S.Ct. at 1389–90.

---

2. Under the case management device at issue here, suits filed prior to July 1, 1985, are given different treatment than suits filed after that date. The April 1985 order, applicable to Charson's suit and all others filed prior to July 1, 1985, imposes dismissal under rule 41.02. According to 41.02(3), a dismissal under rule 41.02 operates as an adjudication on the merits, and thus is a dismissal with prejudice, unless the court specifies otherwise. An amendment to Special Rule 4.03 of the Fourth Judicial District was effective July 1, 1985. This amendment provided that cases filed after July 1, 1985, will be dismissed under rule 41.01. Special Rule 4.03 was subsequently amended to its current form, providing that cases filed after July 1, 1985, will be dismissed under rule 41.02 without prejudice. This amendment was effective October 30, 1985. In summary, suits filed prior to July 1, 1985, are presumptively dismissed with prejudice, whereas suits filed after that date are dismissed without prejudice.

3. Respondent relies upon *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) in support of the court's authority to dismiss an action without providing notice of its intent to do so. In *Link,* the Supreme Court