**Leadro L. SEEMANN, Relator,**

v.

**LITTLE CROW TRUCKING, Commissioner of Jobs and Training, Respondents.**

No. C9–87–800.

Court of Appeals of Minnesota.

Sept. 22, 1987.

John E. Mack, New London, for Leadro
L. Seemann.

Timothy S. Johnson, Willmar, for Little
Crow Trucking.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Considered and decided by POPOVICH, C.J., and NORTON and LOMMEN *, JJ., with oral argument waived.

## OPINION

NORTON, Judge.

Relator Leadro Seemann seeks review of a determination that disqualified him from the receipt of unemployment compensation benefits because he engaged in gross misconduct. We affirm as modified.

## FACTS

Leadro Seemann began working as general manager of the respondent Little Crow Trucking in July 1983. One of his responsibilities was to obtain an ICC license for Little Crow. He was discharged on February 28, 1986 for several reasons, including a claim that he had used Little Crow's funds to obtain another, separate ICC trucking license for himself and a co-worker, under the name GAL.

Seemann applied for unemployment compensation, and his claim for benefits was initially allowed. Little Crow appealed to a department referee. After conducting a hearing, the referee found that Seemann had used $2,989.73 of Little Crow's funds to obtain licensing for GAL, without Little Crow's knowledge or approval.

The referee concluded that Seemann's disloyalty to Little Crow constituted misconduct, and that his misappropriation of Little Crow's funds constituted felony theft, and thus gross misconduct. The referee rejected Seemann's testimony that he had intended to further Little Crow's interests by obtaining licensing for GAL, stating:

> The claimant's testimony that it was just as easy to obtain two licenses as one and that it was "extra" authority for the employer if needed at a later date, was

unpersuasive. If so, the license could have been obtained with the employer's knowledge and naming the employer's officers. The employer gave no consent for the claimant's actions and the employer did not learn of the situation until shortly before the claimant's discharge from employment. It is concluded that the claimant's actions constituted felony theft * * * and, therefore, was gross misconduct within the meaning of the Minnesota Economic Security law.

Seemann appealed to a Commissioner's representative, who remanded for additional evidence. Following the remand hearing, a second referee issued findings identical to those issued by the first referee, and added the following reasoning:

> When asked why he did not inform the employer of the second application and the possible delay with regard to the initial application, the claimant could give no reasonable explanation. The referee feels that in this situation involving a possible delay or the further expenditure of employer funds, the claimant had the duty and obligation to bring this matter to the attention of the employer. By not doing so, the inference can be drawn that the claimant did not wish the employer to know of his actions.

Seemann appealed again to a Commissioner's representative, who affirmed the referee's findings but concluded that Seemann had "embezzled" Little Crow's funds, thereby engaging in gross misconduct disqualifying him from the receipt of unemployment compensation benefits. Seemann has appealed.

## ISSUES

1. Did the Commissioner erroneously consider a theory of disqualification that was not raised by Little Crow?

2. Did the Commissioner improperly rely upon hearsay evidence?

3. Did Little Crow meet its burden of proving that Seemann was discharged for gross misconduct?

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## ANALYSIS

■ An individual who is discharged for gross misconduct is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1 (1986). The statute defines gross misconduct as follows:

> For the purpose of this clause "gross misconduct" is defined as misconduct involving assault and battery or the malicious destruction of property or arson or sabotage or embezzlement or any other act, including theft, the commission of which amounts to a felony or gross misdemeanor.

*Id.* subd. 1(3). The employer has the burden of proving by a preponderance of the evidence that the employee engaged in gross misconduct. *Manos v. First Bank Minnehaha,* 357 N.W.2d 372, 375 (Minn.Ct. App.1984).

### I.

Seemann argues that because Little Crow originally asserted he was discharged for "misconduct" only, a gross misconduct disqualification cannot be imposed. We addressed a similar claim in *Manos:*

> Appellant first contends that the Commissioner erred in finding she had committed gross misconduct because the employer claimed only that she was terminated for misconduct. This argument misconceives the relative roles of the commissioner and the employer. Minn. Stat. § 268.10, subd. 2 (Supp.1983), provides:
>
>> An official, designated by the commissioner, shall promptly examine each claim for benefits filed * * * and, on the basis of the facts found, shall determine whether or not such claims are valid * *. * * * If * * * the employer makes an allegation of disqualification * * * the issue thereby raised shall be promptly determined by said official * * *.
>
> It is the commissioner's role to make all determinations as to eligibility and disqualification, not the employer's.

*Id.* at 375.

Nevertheless, Seemann argues he received insufficient notice of the claims against him, and was therefore deprived of due process.

■ Although Little Crow claims that the due process issue is not reviewable at this time because it was not previously raised, the supreme court in *Neeland v. Clearwater Memorial Hospital,* 257 N.W.2d 366 (Minn.1977) stated that constitutional issues may not be presented to or passed upon by administrative bodies below; the appellate court is the first forum possessing subject matter jurisdiction. *Id.* at 368.

■ The supreme court has held that unemployment compensation benefits are protected by the procedural due process requirements of the fourteenth amendment. *Schulte v. Transportation Unlimited, Inc.,* 354 N.W.2d 830, 832 (Minn.1984). *Schulte* involved the question whether a discharged employee was denied due process of law when a notice of determination reversing a grant of unemployment benefits failed to notify him that he would be liable for repayment of benefits previously paid if he failed to appeal. The court stated:

> The individual's interests and the agency's interests must be balanced in each case to determine whether due process requires additional or different procedures.

*Id.* at 832. The court concluded that "to be constitutionally sufficient, the notice must communicate the interest at stake * * *." *Id.* at 834. The court quoted the holding of a Maryland case:

> "We have often stated that administrative agencies 'must observe the basic rules of fairness as to parties appearing before them.' * * * Even if there were no specific statutory requirement of notice, this principle would seem to require that adequate notice and opportunity to heard be afforded in a case such as this."

*Id.* at 834 (quoting *Ottenheimer Publishers, Inc. v. Employment Security Admin.,* 275 Md. 514, 340 A.2d 701, 704–05 (1975)).

Here, we find that Seemann received sufficient notice of the issues to be addressed,

satisfying the requirements of due process. Little Crow's allegations in its initial notice to the department put Seemann on notice that Little Crow was alleging he had "used Little Crow's funds and company time to promote his own business," and on the back of that notice the department wrote "alleged misappropriation of funds." In addition, the department's notice of the second hearing specifically indicated that the issue of gross misconduct would be litigated.

## II.

Seemann also claims the Commissioner erroneously based his decision upon hearsay evidence. Specifically, Seemann challenges certain letters from an ICC licensing agent, claiming those letters lacked credibility in light of his own personal testimony at the hearing.

We have repeatedly indicated that the rules of evidence need not be followed in unemployment compensation proceedings, and that the Commissioner, in his discretion, may rely upon hearsay evidence. *See e.g., Arnolds Supply & Kleenit Co., Inc. v. Vang,* 410 N.W.2d 37 (Minn.Ct.App.1987); *Vang v. A-1 Maintenance Service,* 376 N.W.2d 479, 482 (Minn.Ct.App.1985).

■ Here, the Commissioner's representative not only found the agent's letters believable, he also found that Seemann was simply not credible. Decisions regarding the credibility of witnesses lie within the discretion of the Commissioner. *Cary v. Custom Coach, Inc.,* 349 N.W.2d 331, 332 (Minn.Ct.App.1984). We defer to the determination that Seemann's testimony was not believable, particularly since the Commissioner's representative was affirming a decision by the referee, who had the opportunity to observe the demeanor of the witnesses.

## III.

Seemann claims Little Crow did not sustain its burden of proving he was discharged for gross misconduct. Seemann first alleges that the GAL episode "was very much an afterthought on the part of Little Crow." This allegation is refuted by

Little Crow's initial notice to the department, wherein it claimed that one reason for Seemann's discharge was the fact that he had used Little Crow's funds and company time to promote his own business. In addition, the transcript of the first hearing indicates that Little Crow specifically relied upon the GAL incident as a basis for its dismissal of Seemann. Indeed, Seemann was discharged on the same morning Little Crow uncovered the full facts of the GAL episode.

As noted above, "gross misconduct" is defined as misconduct involving any act which amounts to a "felony or misdemeanor." We must assume the legislature intended the elements of a felony or misdemeanor to be defined by reference to Minnesota law.

■ The Commissioner's representative determined that Seemann's actions constituted embezzlement and thus gross misconduct. "Embezzlement" is defined by statute, and the definition refers specifically to embezzlement of "public funds." Minn. Stat. § 609.54 (1986). The statute provides: "Whoever does an act which constitutes embezzlement under the provisions of Minnesota Constitution article XI, section 13 may be sentenced as follows * * *." *Id.* The constitution characterizes embezzlement as the conversion of "state funds" or "school funds." Minn. Const. art. XI, § 13. Nowhere in the constitution or statutes of Minnesota is there reference to embezzlement of private funds, nor is there a common law crime of private embezzlement in Minnesota. *See* Minn.Stat. § 609.015 (1986) ("Common law crimes are abolished"). The Commissioner therefore erroneously determined that Seemann's actions constituted embezzlement.

Despite our disagreement with the basis for the Commissioner's decision, nevertheless we do agree with his ultimate conclusion that Seemann's actions constituted gross misconduct. In so doing, we rely, as did the referee, upon Seemann's violation of Minnesota's theft statute:

Whoever does any of the following commits theft * * *:

*    *    *    *    *    *

(3) obtains for the actor or another the possession, custody or title to property of or performance of services by a third person by intentionally deceiving the third person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. "False representation" includes without limitation:

(a) the issuance of a check, draft or order for the payment of money or the delivery of property knowing that the actor is not entitled to draw upon the drawee therefor or to order the payment or the delivery thereof;

\* \* \* \* \* \*

(4) By swindling, whether by artifice, trick, device, or any other means, obtains property or services from another person \* \* \*.

Minn.Stat. § 609.52, subd. 2 (1986).

▇▇▇▇ The referee found:
The evidence and testimony presented by the employer showed that the claimant used the employer's funds in the amount of $2,989.73 to pay an agent to obtain licensing for a business in which he was listed as a principal. \* \* \* The employer gave no consent for the claimant's actions and the employer did not learn of the situation until shortly before the claimant's discharge from employment. It is concluded that the claimant's actions constituted felony theft, as defined above, and, therefore was gross misconduct within the meaning of the Minnesota economic security law.

These findings, while technically a part of the referee's memorandum, are still findings. *See Appelgate v. Commissioner of Public Safety,* 402 N.W.2d 106, 109 (Minn. 1987) (court relied upon a finding made in trial court's memorandum). The Commissioner's representative determined: "[T]he findings of fact as found by the Referee are in accordance with the evidence and are therefore adopted as the findings of fact of the Commissioner." Since these findings support our conclusion that Seemann engaged in gross misconduct by reason of theft, we need not remand to the Commis-

sioner's representative; rather, we simply affirm his conclusion upon different grounds.

## DECISION

Relator's actions constituted theft, and thus gross misconduct, and he is therefore disqualified from receiving unemployment compensation benefits.

Affirmed as modified.