**John GODBOUT, Relator,**

v.

**DEPARTMENT OF EMPLOYMENT AND ECONOMIC DEVELOPMENT, Respondent.**

No. A12–1283.

Court of Appeals of Minnesota.

March 18, 2013.

**800**

Charles H. Thomas, Laura Melnick, Southern Minnesota Regional Legal Services, Inc., St. Paul, MN, for relator.

Lee B. Nelson, Colleen Timmer, Department of Employment and Economic Development, St. Paul, MN, for respondent.

Considered and decided by HUDSON, Presiding Judge; STONEBURNER, Judge; and KIRK, Judge.

## OPINION

KIRK, Judge.

Relator challenges the decision of the unemployment-law judge (ULJ) that because relator did not make a timely appeal of a determination of overpayment by fraud, the ULJ lacks jurisdiction to reach the merits of the appeal. Relator argues that the notice provided in this case violates the state constitutional right to due process, and therefore he must be granted a hearing on the merits of the overpayment claim. We reverse and remand.

## FACTS

The facts of this case are not in dispute. In 2005, while residing on Edmund Avenue in St. Paul, relator John Godbout applied for and received unemployment-insurance benefits for approximately seven months. In February 2006, approximately five months after his benefits claim ended, Godbout was incarcerated at the Ramsey County Correctional Facility. Godbout did not notify respondent DEED of his changed address. Approximately two months later, while Godbout was still in-

carcerated, DEED determined that in 2005 Godbout intentionally provided false information to obtain unemployment-insurance benefits, resulting in an overpayment of $9,256 and a penalty of $2,314. DEED's determination stemmed from an anonymous tip that Godbout, while receiving benefits, leased a taxi cab and worked 48 to 60 hours per week. DEED mailed its determination of overpayment by fraud to the Edmund Avenue address. The determination stated that it would "become final unless an appeal [was] filed within 30 calendar days from [April 25, 2006]." Because Godbout no longer resided on Edmund Avenue, and did not receive any mail from that address, Godbout did not receive the determination.

After his 2006 incarceration, Godbout was homeless for several years. While homeless, he used his mother's address on Snelling Avenue "for anything that was important," including his driver's license. In 2010, after sending multiple pieces of mail to the Edmund Avenue address, DEED looked up Godbout's driver's license and obtained the Snelling Avenue address. On September 7, DEED mailed an unemployment-benefits-overpayment billing statement to the Snelling Avenue address. This statement, which informed Godbout that he now owed a total of $19,463, was the first document Godbout received regarding the determination of overpayment by fraud.

Godbout telephoned DEED regarding the billing statement. On October 7, Godbout's counsel requested that DEED reissue the determination of overpayment by fraud, thereby restarting Godbout's appeal period. Godbout's counsel stated that, in the alternative, her letter served as "an appeal of the decision not to reissue the notice or provide Mr. Godbout his due

process rights to appeal." DEED did not reissue its determination. In November, a ULJ dismissed Godbout's appeal as untimely. Godbout requested reconsideration. More than 15 months later, in March 2012, the ULJ issued his decision and ordered an evidentiary hearing. Following a telephonic hearing, a different ULJ found that Godbout did not make a timely appeal and, therefore, she lacked jurisdiction to reach the merits of the appeal. Upon reconsideration, the ULJ affirmed her original findings of fact and decision. This appeal followed.

## ISSUE

Is relator entitled to request a hearing on the merits of the determination of overpayment by fraud?

## ANALYSIS

When reviewing the decision of a ULJ, we may affirm the decision, remand the case for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced because the ULJ's "findings, inferences, conclusion, or decision are (1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." Minn.Stat. § 268.105, subd. 7(d) (2012).

A ULJ's factual findings are viewed in the light most favorable to the decision and will not be disturbed on appeal if there is substantial evidence to sustain those findings. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.

2006). But a ULJ's decision to dismiss an appeal as untimely is a question of law, subject to de novo review. *Kennedy v. Am. Paper Recycling Corp.*, 714 N.W.2d 738, 739 (Minn.App.2006).

The statute in effect at the relevant time provides that a determination of overpayment by fraud becomes final "[u]nless the applicant files an appeal within 30 calendar days after the sending of the determination ... to the applicant by mail or electronic transmission." Minn.Stat. § 268.18, subd. 2(b) (2004). If sent by mail, this determination "must be sent to the [applicant's] last known address." Minn.Stat. § 268.032(b) (2004). It is undisputed that DEED mailed a determination of overpayment by fraud to Godbout's last known address, and that Godbout did not appeal this determination within 30 calendar days. Thus, under the statute, Godbout's appeal is untimely and dismissal is appropriate.[1] *See Johnson v. Metro. Med. Ctr.*, 395 N.W.2d 380, 382 (Minn.App.1986) ("Where an appeal is untimely, it must be dismissed for lack of jurisdiction.").

■■■■ But this does not end our analysis. The Minnesota Constitution guarantees that "[n]o person shall ... be deprived of life, liberty or property without due process of law." Minn. Const. art. I, § 7. Unemployment benefits are an entitlement protected by the constitutional right to procedural due process. *See Schulte v. Transp. Unlimited, Inc.*, 354 N.W.2d 830, 832 (Minn.1984). "The re-

quirement of due process is a constitutional one and cannot be waived or 'dispensed with' either by the legislature or by an executive tribunal to which it delegates the duty of administering a law." *Juster Bros. v. Christgau*, 214 Minn. 108, 122, 7 N.W.2d 501, 509 (1943). When, as here, a due process challenge revolves around the adequacy of notice, we determine whether the notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *McShane v. Comm'r of Pub. Safety*, 377 N.W.2d 479, 482–83 (Minn.App.1985) (quotation omitted), *review denied* (Minn. Jan. 23, 1986).

Godbout argues that "the record contains no constitutionally sufficient notice to [him] of the consequences of his not maintaining a current mailing address with DEED following the end of his benefit claim." We agree. In *Schulte*, the Minnesota Supreme Court analyzed the constitutionality of a notice reversing a grant of unemployment benefits. 354 N.W.2d at 832. Schulte was found eligible for unemployment benefits and received benefits for four months. *Id.* at 831. Schulte's employer appealed the determination and Schulte received notices for two hearings. *Id.* But because Schulte was gainfully reemployed, he did not attend the hearings. *Id.* The appeal tribunal reversed the determination of eligibility, and Schulte did not appeal. *Id.* Schulte subsequently received a notice of overpayment. *Id.* Schulte then

---

1. Although Godbout concedes that his "argument is not that DEED failed to follow the statutory scheme," he implies that, when starting an overpayment by fraud claim against a former recipient of unemployment benefits, DEED is statutorily obligated to contact other agencies in an effort to verify and ascertain the applicant's "last known address." We observe that Godbout incorrectly

asserts that Minn.Stat. § 268.19 "grants DEED specific authority to access data from law enforcement agencies in order 'to ascertain the last known address' of an individual." Rather, this statute specifies which agencies may *receive* and use data "gathered from any person pursuant to the administration of the Minnesota Unemployment Insurance Law." Minn.Stat. § 268.19, subd. 1(a) (2004).

sought to reopen the appeal tribunal for a hearing on the merits. *Id.* The Commissioner of Economic Security denied Schulte's request. *Id.* at 832. On appeal, the supreme court reversed and remanded "for a de novo appeal tribunal hearing on the merits of Schulte's eligibility." *Id.* at 835. The supreme court reasoned:

> What need is there for a person who has received benefits when needed and who subsequently finds another job to take time off from a new job to attend a hearing on a question that is ostensibly moot to the claimant? That person may rationally believe that he has already benefitted from the program and, since future benefits are not needed, there is no reason to attend another hearing. Unless that person knows the consequences of a reversal of an initial decision awarding benefits, the motivation to appear at a later hearing is nonexistent. Accordingly, to be constitutionally sufficient, the notice must communicate the interest at stake—that a reversal means the recipient has been overpaid and repayment is required.

*Id.* at 834.

We find this logic relevant and compelling. While Godbout received unemployment benefits, he was required to have an active benefit account and file biweekly requests for unemployment benefits. *See* Minn.Stat. § 268.085, subd. 1(1) (2004). But when he stopped receiving unemployment benefits—more than seven months before DEED mailed the determination of overpayment by fraud to the Edmund Avenue address—he was no longer subject to such requirements. The record contains no evidence that DEED informed Godbout

that failure to maintain a current mailing address with DEED for four years could result in a final determination of liability without actual notice. *See* Minn.Stat. § 268.18, subd. 2(e) (2004) (granting DEED up to four years from the effective date of a benefit account to determine that benefits were fraudulently obtained). Godbout testified that when he moved from the Edmund Avenue address, he did not notify DEED of the change because he was no longer receiving any funds and he believed "everybody that needed to know where [he] was, knew where [he] was."[2]

■ On this record, we conclude that DEED failed to "communicate the interest at stake," and Godbout acted rationally. *See Schulte,* 354 N.W.2d at 834. Accordingly, we hold that to satisfy the constitutional right to due process, a determination of overpayment by fraud must be preceded by clear notice to the unemployment benefit recipient of the potential consequences of failing to maintain a current mailing address with DEED for four years after the receipt of benefits. *See* Minn.Stat. § 268.18, subd. 2(e) (2012) (granting DEED up to four years to determine that benefits were overpaid due to fraud during a particular benefit week). Absent such notice, the appeal period to challenge a determination of overpayment by fraud begins to run from the date on which the subject of the determination receives actual notice of the determination.

## DECISION

Because the notice at issue resulted in a denial of due process, and because Godbout timely appealed after receiving notice

---

**2.** We find Godbout's testimony particularly persuasive in light of the fact that DEED's overpayment by fraud determination was based merely on an anonymous tip—a practice that we find disturbing.

of the determination, Godbout is entitled to a hearing on the merits of the determination of overpayment by fraud and the ULJ erred by dismissing his appeal as untimely.

**Reversed and remanded.**