**Mary Ann PETERSON, et al.,
Appellants,**

v.

**SKUTT CERAMIC PRODUCTS, INC., American Art Clay Company, Inc., Paragon Industries, Inc., Minnesota Clay Company, University of Minnesota and University of Minnesota–Duluth, by and through the Board of Regents, and Lakehead University, Respondents.**

No. C9–87–991.

Court of Appeals of Minnesota.

Dec. 29, 1987.

Review Denied March 18, 1988.

---

John V. Norton, Tierney, Norton & Helgen, P.A., Minneapolis, for Mary Ann Peterson.

Richard S. Scherer, Castor, Klukas & Scherer, Chtd., Minneapolis, for Skutt Ceramic Products, Inc.

Michael G. Simpson, Baukol, Nyberg, Simpson & Crowley, Golden Valley, for American Art Clay Co., Inc.

Teresa R. Schultz, Alan R. Vanasek, Timothy S. Crom, Jardine, Logan & O'Brien, St. Paul, for Paragon Industries, Inc.

Richard P. Mahoney, Sandra J. Skluzacek, Mahoney, Dougherty and Mahoney, Minneapolis, for Minnesota Clay Co.

Eric J. Magnuson, Gregory M. Weyandt, Rider, Bennett, Egan & Arundel, Minneapolis, for University of Minnesota and University of Minnesota–Duluth, by and through the Board of Regents, and Lakehead University.

Heard, considered and decided by FOLEY, P.J., and STONE and LOMMEN, JJ.[*]

## OPINION

FOLEY, Judge.

Appellants Mary Ann and Brian Peterson appeal the judgment of the district court's denial of their motion to vacate judgment pursuant to Minn.R.Civ.P. 60.02. Appellants argue judgment should have been vacated because they have a meritorious claim, the reasons for delay were excusable, and the case was dismissed under an unconstitutional rule of the district court. We affirm.

## FACTS

Appellants commenced this action seeking damages for injuries allegedly resulting from Mary Ann's exposure to toxic substances while using ceramic kilns. The exposure is alleged to have taken place while she was a student at the University of Minnesota and Lakehead University and when she worked as an art teacher in several Minnesota school districts. Appellants commenced this action on July 12, 1984, by filing a summons and complaint.

On April 10, 1985, the chief judge of the Fourth Judicial District issued Rule 4.03 which stated, in part:

Cases filed with the Court prior to July 1, 1985, but not certified ready for trial, will be activated effective July 1, 1985, for purposes of the initial filing date. All cases activated on this date will be dismissed on July 1, 1986, unless a Note of Issue/Certificate of Readiness has been filed or the case has been continued prior to the expiration of 12 months, under Rule 41.02, Rules of Civil Procedure.

Order, reprinted in Minnesota Rules of Court, 501 (1986).

On June 13, 1986, attorney Mark R. Kosieradzki sent a letter to the trial court judge requesting an extension of the July 1, 1986 deadline imposed under rule 4.03. In the letter, Kosieradzki informed the court that his firm would be withdrawing from the case within seven days. He asked that any continuance granted provide ample time for substitute attorneys to analyze the file and proceed with the remaining discovery. On June 16, 1986, the court granted appellants an extension from July 1, 1986 to January 1, 1987. The order stated: "Failure to file a note of issue/cer-

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

tificate of readiness by January 1, 1987, will result in this matter being dismissed."

On August 28, 1986, Kosieradzki moved to withdraw as counsel in this case. On September 5, 1986, the trial court granted the motion. Kosieradzki filed a notice of withdrawal on September 16, 1986.

On December 15, 1986, Brian, who is an attorney, sent a letter to the trial judge requesting the time within which to file the note of issue/certificate of readiness be extended to September 30, 1987. The letter detailed appellants' efforts to obtain counsel to represent them in this matter. The letter stated that since the previous counsel withdrew from the case, two other firms had reviewed the file. It went on to say:

> The first law firm declined representation due to a conflict of interest with the experts which are anticipated to be called on [appellants'] behalf * * *. The second law firm has been reviewing this file since a few days after the first firm declined representation. Due to the size and complexity of the file, and the schedule of the attorney reviewing the file, I still have not received word as to whether this second law firm will be representing my wife and I in [this case].

In an affidavit, Brian stated he expected to receive a response from the trial court before the end of 1986. If the trial court denied the requested extension, appellants "intended to file a Note of Issue anyway to protect the case until [the attorney reviewing the case] could discuss with [Brian] whether to accept [a proposed offer] or proceed with representation." According to the affidavit, when appellants received no response from the trial court regarding the extension request prior to the end of the year, they presumed that the extension would be granted "or else some * * * deadline (e.g. 20 days from date of an order) to get the Note of Issue filed." According to the trial court's order denying appellants' motion to vacate, appellants left town after assuming the request for an extension would be granted.

On January 5, 1987, the trial court issued an order denying appellants' request for an extension of time. In an attached memorandum, the court stated:

> It is clear to the Court that Plaintiffs in this matter have had ample time in which to obtain counsel and prepare their case, particularly in light of the fact that [appellant] Brian Peterson is himself an attorney familiar with this type of litigation. No further continuances will be granted in connection with this case. It should be set for trial at this point, or be dismissed.

On January 16, 1987, the trial court issued an order dismissing the case "pursuant to the order of the Chief Judge of the Hennepin County District Court dated April 10, 1985."

On February 3, 1987, appellants filed a motion to vacate judgment. The motion was denied on March 27, 1987. In an attached memorandum, the trial court, questioning whether appellants have a meritorious claim, stated:

> Mary Ann Peterson claims injuries resulting from exposure to toxic substances during the years 1973 to 1978. * ¹ * Brian Peterson claims loss of consortium. [Appellants] have not yet identified an expert who will testify on their behalf. [Respondents] deposed an expert who stated that * * * Mary Ann Peterson's claims to toxic allergies are "ridiculous."

The court further stated that appellants had acted with due diligence when they received the trial court's order. However, in response to respondents' claim that substantial prejudice would result from reopening this case, the trial court found that the memories of those involved could be fading with the passage of time and that respondents would incur additional legal fees and delays if the case is reopened. Finally, the trial court found appellants do not have a reasonable excuse for failing to act by the January 1, 1987, deadline, stating:

> One extension beyond the July 1, 1986, deadline for filing a note of issue was granted * * *. [The] order granting the continuance clearly stated that the case would be dismissed if action was not

taken by January 1, 1987. [Appellants] should have been fully aware of this.

## ISSUES

1. Was the trial court's refusal to vacate judgment an abuse of discretion?

2. Was the April 10, 1985, order of the chief judge of the Fourth Judicial District unconstitutionally applied to appellants?

## ANALYSIS

### I.

■ A trial court's decision whether or not to relieve a party from a judgment will be upheld absent a clear abuse of discretion. *Howard v. Frondell,* 387 N.W.2d 205, 207–08 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. July 31, 1986). A motion to open a judgment should be granted if the party against whom judgment was entered (a) has a reasonable defense on the merits, (b) has a reasonable excuse for failure or neglect to answer, (c) acted with due diligence after notice of the entry of the judgment, and (d) no substantial prejudice will result to the other party. *Hinz v. Northland Milk & Ice Cream Co.,* 237 Minn. 28, 30, 53 N.W.2d 454, 455–56 (1952). In applying the test to the facts of the present case, we find that the trial court did not err in failing to vacate the default judgment.

### A. *The Merits of Appellants' Claim*

Because the *Hinz* test is generally applied in the context of a default judgment, it is phrased in terms of whether a party has a meritorious defense. However, this may also be phrased in terms of whether the plaintiff has a meritorious claim. *Charson v. Temple Israel,* 405 N.W.2d 895 (Minn.Ct.App.1987), *pet. for rev. granted* (Minn. July 15, 1987). Here, the trial court found the answer to this question to be doubtful. Primarily, the trial court noted appellants have not as yet found an expert witness who could testify in support of their claim. This is after almost three years since the summons and complaint was first served. Further, the trial court noted one expert deposed by respondents

has stated appellants' claims are "ridiculous."

■ Appellants argue evidence produced by respondents, apparently a deposition of Dr. Charles Reed of the Mayo Clinic, was only based on a 15–minute appointment with Mary Ann. However, under *Hinz,* it is the party seeking to have a judgment opened who has the burden of showing a meritorious claim. It is not enough to show the respondents' case is weak. Appellants have not shown they have a meritorious cause of action.

### B. *Appellants' Promptness After Notice of Default*

This issue does not seem to be in dispute. Appellants filed a motion to vacate judgment shortly after the judgment was entered.

### C. *Prejudice to Respondents*

■ In denying appellants' motion to vacate the judgment, the trial court found respondents would be prejudiced if the case were reopened because (1) the memories of those involved in the incidents relevant to the case would be fading, and (2) the respondents would incur additional legal fees and delays.

Some prejudice is inherent in every delay. *Sand v. School Service Employees Union, Local 284,* 402 N.W.2d 183, 186 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. April 29, 1987) (citing *Vrooman Floor Covering Inc. v. Dorsey,* 267 Minn. 318, 320, 126 N.W.2d 377, 378 (1964)). However, where the only prejudice is added expense and delay, substantial prejudice of the kind necessary to keep a judgment from being reopened does not exist. *See, e.g., Finden v. Klaas,* 268 Minn. 268, 272, 128 N.W.2d 748, 751 (1964).

The incidents alleged to have caused Mary Ann's illnesses took place over ten years ago, primarily between 1974 and 1978. "After so many years of unnecessary delay, the need to search for identifiable and concrete examples of prejudice diminishes." *Belton v. City of Minneapolis,* 393 N.W.2d 244, 246 (Minn.Ct.App.1986),

*pet. for rev. denied* (Minn. Nov. 19, 1986). *See also Firoved v. General Motors Corp.,* 277 Minn. 278, 284, 152 N.W.2d 364, 369 (1967) (defendants are entitled to weight of policy that seeks to prevent unreasonable delays in absence of a showing of a particular prejudice). Therefore, the court was not clearly erroneous in finding respondents would suffer substantial prejudice if the default judgment was vacated.

### D. *Whether Appellants' Neglect Was Excusable*

In denying appellants' motion to vacate, the trial court found they did not have a reasonable excuse for failing to act by the January 1, 1987 deadline. Appellants claim their failure to meet this deadline was excusable because they made every effort to obtain substitute counsel after Kosieradzki withdrew from the case but, given the complexity of the case and the voluminous nature of the file, they were unable to retain counsel in time to meet the deadline. In its order denying a second extension, the trial court stated appellants had ample time in which to obtain counsel and prepare their case.

While appellants' prior counsel did not withdraw from the case until September 1986, it would seem they had notice of impending withdrawal much earlier than that. At the very least, they would have become aware of counsel's desire to withdraw in August 1986, when Kosieradzki first made a motion to withdraw from the case. More likely, appellants knew in June 1986 counsel wished to withdraw from the case. In Kosieradzki's letter to the court requesting an extension beyond the July 1, 1986 deadline, he stated he intended to withdraw within seven days. Thus, it appears appellants had six months within which to obtain counsel.

Appellants claim the neglect which has put them into the current "dilemma" is the neglect of Kosieradzki in failing to adequately prepare the case for trial. However, the court found the neglect that led to dismissal of the case was not that of the attorneys in the case but that of the parties, pointing to their assumption that a continuance would be granted and the fact they subsequently left town instead of preparing the case for trial. We agree. Brian is an attorney. He was told in July 1986 he had to be ready to go to trial by January 1, 1987. Sixth months was adequate time in which to prepare the case for trial. Instead of doing so, appellants simply assumed the court would grant an extension. This would be inexcusable neglect under almost any imaginable circumstance. It certainly is where one of the litigants is an attorney.

For the reasons stated above, we feel the court acted properly in refusing to grant appellants' motion to vacate the default judgment.

## II.

■ Appellants argue their case was dismissed pursuant to an unconstitutional order of the district court. While concerns over the constitutionality of this order have been expressed in the past, we need not address this issue here. *See Schulz v. Milam,* 410 N.W.2d 845 (Minn.Ct.App. 1987). *But see Collins v. Cochrane & Bresnahan,* 415 N.W.2d 715 (Minn.Ct.App. 1987). Despite the trial court's statement that it dismissed the case pursuant to the order of the chief judge, we believe the court was acting instead under its inherent authority to manage the cases before it.

Minn.R.Civ.P. 41.02 states in part:

> The court may on its own motion, or upon motion of a party, and upon such notice as it may prescribe, dismiss an action for failure to prosecute or to comply with these rules or any order of the court.

Furthermore, in *Lampert Lumber Co. v. Joyce,* 405 N.W.2d 423, 425 (Minn.1987), the supreme court stated:

> If a party does not cooperate with the litigation process by failing to comply with the rules of procedure or an order of the court, the judge may dismiss the case with or without prejudice.

*Id.* at 425.

This action was continued for six months after the date set for automatic dismissal

pursuant to the chief judge's order. Under that order, cases were to be dismissed on July 1, 1986, if they were not continued or certified ready to go to trial. Thus, the parties were no longer within this provision for automatic dismissal. At the time the case was continued, appellants were told to have the case ready for trial by January 1, 1987. However, they did not comply with this order. They had ample opportunity to have their claims heard.

Despite almost three years in which to do so, appellants have produced neither medical nor products experts to substantiate their claims. The record is devoid of any offer to show a meritorious cause of action. Appellants still were not ready to do so as of the date of this appeal. Under these circumstances, the court was well within its authority to dismiss this action for failure to prosecute.

## DECISION

The trial court did not abuse its discretion in denying appellants' motion to vacate the default judgment. Appellants' case was dismissed pursuant to the inherent authority of the trial court and not pursuant to the order of the chief judge of the district court.

Affirmed.