Barbara WILHITE, Relator,

v.

**SCOTT COUNTY HOUSING AND RE-DEVELOPMENT AUTHORITY,**
Respondent.

No. A07–2103.

Court of Appeals of Minnesota.

Jan. 13, 2009.

JaPaul J. Harris, Michael Hagedorn, Southern Minnesota Regional Legal Services, St. Paul, MN, for relator.

Robert A. Alsop, Kennedy & Graven, Minneapolis, MN, for respondent.

Considered and decided by HUDSON, Presiding Judge; LARKIN, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

Relator challenges the termination of her Section 8 Rental Assistance, arguing

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

that (1) the determination that relator had been evicted from her residence for a serious violation of her lease is not supported by substantial evidence, (2) the notice to terminate relator's rental assistance was procedurally and constitutionally deficient, and (3) relator was deprived of her constitutional right to confront and cross-examine witnesses at her hearings. Because relator's admitted failure to vacate her residential premises upon the expiration of the lease constitutes a serious lease violation under 24 C.F.R. § 982.552(b)(2), because there were no procedural or constitutional deficiencies in the notice to terminate relator's rental assistance, and because her claims of irregularities at the hearings are without merit, we affirm.

## FACTS

Relator Barbara Wilhite participated in the Section 8 Rental Assistance program. On July 1, 2006, Wilhite and her daughter executed a one-year lease with Evergreen Heights Townhomes (Evergreen Heights). Wilhite resided there with her adult daughter and two grandchildren. Evergreen Heights was unwilling to renew the lease due to "lease violations including numerous late rent payments and three Unlawful Detainer actions." On April 16, 2007, Wilhite and her daughter were given notice to vacate the premises no later than the end of the lease term, June 30, 2007.

Wilhite's daughter and grandchildren vacated the premises before the expiration of the lease, but Wilhite did not. On July 10, 2007, pursuant to Minn.Stat. § 504B.321, Evergreen Heights filed an eviction action against Wilhite and her daughter. On July 24, following a hearing, a Scott County district court found that

Wilhite was given proper notice to vacate the premises and failed to do so, and granted judgment to Evergreen Heights for recovery of the premises. Thereafter, upon learning of Wilhite's eviction, respondent Scott County Housing and Redevelopment Authority (HRA) notified Wilhite of the termination of her Section 8 Rental Assistance effective July 31, 2007.

Wilhite contested the termination of her rental assistance. On August 24, 2007, an informal hearing occurred before a hearing officer. Nicole Horner, a Section 8 program administrator, appeared on behalf of the HRA and testified regarding several complaints that were made about Wilhite and her daughter. She also testified that Wilhite and her daughter had been warned about the loss of their Section 8 Rental Assistance if they were evicted and that Wilhite's Section 8 Rental Assistance was terminated because she failed to vacate the premises upon the expiration of the lease. Wilhite testified that she had no intention of "staying somewhere where [she] was told to get out," but she had nowhere to go.

The hearing officer found that "Ms. Wilhite was duly informed of the consequences of her actions and any resulting court-ordered eviction and chose nonetheless not to vacate her rental unit in violation of her lease." Thus, the hearing officer determined "that a preponderance of evidence supports the fact that Barbara Wilhite did in fact seriously and repeatedly violate a provision of her lease on numerous occasions ... and this led to a court-ordered eviction which based on federal program regulations ... is grounds for termination of her Section 8 participation." This appeal followed.

appointment pursuant to Minn. Const. art. VI, § 10.

## ISSUES

I. Is the determination that Wilhite seriously violated her lease by failing to vacate the leased premises at the expiration of her lease supported by substantial evidence?

II. Was Wilhite's termination notice procedurally and constitutionally deficient?

III. Was Wilhite deprived of her constitutional right to confront and cross-examine witnesses at the informal hearing on August 24, 2007?

## ANALYSIS

■ When a public-housing authority receives evidence, hears testimony, and makes a determination to deny an individual Section 8 benefits, it acts in a quasi-judicial capacity. *Carter v. Olmsted County Hous. & Redevelopment Auth.,* 574 N.W.2d 725, 729 (Minn.App.1998). "An agency's quasi-judicial determinations will be upheld unless they are unconstitutional, outside the agency's jurisdiction, procedurally defective, based on an erroneous legal theory, unsupported by substantial evidence, or arbitrary and capricious." *Id.* We examine the findings to determine whether they support the decision but do not retry facts or challenge the credibility determinations of the agency. *Senior v. City of Edina,* 547 N.W.2d 411, 416 (Minn. App.1996). "The decision is to be upheld if the lower tribunal furnished any legal and substantial basis for the action taken." *Id.* (citation omitted).

### I.

■ Wilhite first argues that the HRA did not meet its burden of proving by substantial evidence that Wilhite was evicted because of a "serious violation of the lease" as required by 24 C.F.R. § 982.552(b)(2).

■ We will not disturb an agency's determination so long as it is supported by substantial evidence. *Carter,* 574 N.W.2d at 730. Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency,* 644 N.W.2d 457, 466 (Minn.2002); *see also Carter,* 574 N.W.2d at 730 (defining substantial evidence). The substantial evidence test "is met when we find such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Request of Interstate Power Co.,* 574 N.W.2d 408, 415 (Minn.1998) (citation omitted). Therefore, on appeal, Wilhite must demonstrate that the agency's findings, when considered in their entirety, are not supported by the record. *Carter,* 574 N.W.2d at 729. On review, we apply an abuse-of-discretion standard. *Id.*

■ Regulations promulgated by the Minnesota Department of Housing and Urban Development (HUD) apply to all participants in the Section 8 program. *Manor v. Gales,* 649 N.W.2d 892, 894 (Minn.App.2002). HUD regulations are interpreted according to their plain language. *Dep't of Hous. & Urban Dev. v. Rucker,* 535 U.S. 125, 131, 122 S.Ct. 1230, 1233, 152 L.Ed.2d 258 (2002).

HUD regulations provide that a housing authority agency *"must* terminate program assistance for a family evicted from housing assisted under the program for *serious* violation of the lease." 24 C.F.R. § 982.552(b)(2) (emphasis added). This is a *mandatory* provision under the canons of statutory interpretation. *Cole v. Metro. Council HRA,* 686 N.W.2d 334, 338 (Minn. App.2004) (affirming termination of evicted

tenant's Section 8 benefits because word "must" is mandatory). Therefore, according to the plain language of the statute, the HRA is required to terminate Wilhite's rental assistance if her failure to vacate the leased premises at the expiration of the lease constitutes a serious violation of the lease.

What constitutes a serious violation of the lease is not defined in 24 C.F.R. § 982.552(b)(2). And because there is no precedent defining "serious violation" in this context, the question of whether the failure to vacate leased premises at the expiration of the lease is a "serious" violation of the lease, triggering an eviction that leads to the termination of Section 8 benefits, is an issue of first impression.

"Serious" is defined as "important" or "weighty." *Black's Law Dictionary* 1398 (8th ed.2004). Other federal regulations also are instructive of what constitutes a serious violation. An owner may terminate tenancy when the tenant commits a serious violation or repeated violations of the terms and conditions of the lease, or for other good cause. 24 C.F.R. § 982.310(a)(1), (3) (2008). "Good cause" is defined as a family history of destruction of property or of living or housekeeping habits resulting in damage to the unit or premises. 24 C.F.R. § 982.310(d)(1)(ii) (2008). Drug use on the premises also provides a basis for termination of tenancy. 24 C.F.R. § 982.310(c)(1) (2008). Moreover, an owner may terminate a lease for a Section 8 tenant's failure to pay rent, which constitutes a serious violation. 24 C.F.R. § 982.310(a)(1).

Here, Wilhite argues in part that because the lease expired on June 30, 2007, her failure to vacate the premises thereafter cannot be a lease violation (much less a serious violation of the lease) because the lease no longer existed. But Wilhite cites no applicable authority to support her argument. Provision 26 in the lease states: "At the termination of this Lease, Tenant shall give immediate possession to Landlord, and deliver all keys to Landlord." Wilhite violated this provision of the lease, and Wilhite's argument that there was no lease violation lacks merit.

■ Wilhite maintains that even if she was evicted for a violation of the lease, it was not a "serious violation." Wilhite argues that the hearing officer should have invoked discretion and considered the mitigating factors presented. But we initially note that a failure to pay rent constitutes good cause to terminate a Section 8 lease and that there is only a minimal practical difference between a tenant with a lease who occupies a premises but does not pay rent and a former tenant who, after expiration of her lease, continues to occupy the premises without paying rent. Further, we believe that the seriousness of the violation becomes apparent when compared with what we consider to be minor violations of a lease—late payment of rent, improperly boarding a pet, or ignoring homeowner-association rules, for example. In the case of minor violations, the landlord may suffer minor economic harms or inconvenience, but neither the landlord's property nor economic interest is significantly affected. In the case of serious violations, the landlord is deprived of either a tangible property interest or a real, significant, economic benefit. Like the destruction of property or the failure to pay rent, events previously explicitly deemed to be serious lease violations, a holdover tenant deprives the landlord of both a property interest and an economic benefit. Because of the holdover, the landlord is unable to re-let the property, and the landlord will not only lose rental income, but also may lose a successor tenant who had been contracted to lease the premises.

Although we recognize the harsh consequences that result from the termination of Wilhite's Section 8 Rental Assistance, we are mindful that Wilhite was warned several times about the likely consequences of her behavior. And there is no indication that Wilhite attempted to communicate her concerns or difficulties to Evergreen Heights or the HRA prior to her eviction; or that she was actively seeking alternative living arrangements; or that an emergency or unforeseen event prevented her from vacating the premises.

In sum, there is substantial evidence in the record supporting the HRA's finding that Wilhite's failure to vacate the premises on June 30, 2007 was a serious violation of her lease leading to the court-ordered eviction, and that the HRA did not abuse its discretion by applying the mandatory-termination provision and terminating Wilhite's Section 8 Rental Assistance.

## II.

■ Wilhite next argues that the HRA violated her due process rights by not adequately notifying her of the factual basis for terminating her rental assistance. Wilhite contends that she was unable to defend herself, maintaining that she was not aware that she violated her lease and that the termination-of-benefits notice failed to list past lease violations. The HRA contends that Wilhite was adequately informed of the termination of her Section 8 benefits and was represented by counsel during the hearing to challenge that decision.[1]

To comply with federal regulations, the HRA must provide individuals whose Section 8 benefits have been terminated with "prompt written notice that [they] may request a hearing." 24 C.F.R. § 982.555(c)(2) (2008). The notice must (1) state the reasons for the termination, (2) advise the individual of the right to request an informal hearing to contest the termination, and (3) state the deadline for requesting an informal hearing. *Id.*

■ To be constitutionally sufficient, the notice must communicate the interest at stake. *Seemann v. Little Crow Trucking*, 412 N.W.2d 422, 425 (Minn.App.1987). Notice is inadequate when the consequences of government action are not foreseeable. *See In re Metro Siding, Inc.*, 624 N.W.2d 303, 308–09 (Minn.App.2001). If a party knows or has reason to know of the adverse consequences of government action, the notice meets the requirements of procedural due process. *Comm'r of Natural Res. v. Nicollet County Pub. Water/Wetlands Hearings Unit*, 633 N.W.2d 25, 31 (Minn.App.2001), *review denied* (Minn. Nov. 13, 2001). Whether an administrative agency has provided sufficient notice in accordance with the requirements of procedural due process is a legal issue, which we review de novo. *In re License of W. Side Pawn*, 587 N.W.2d 521, 522 (Minn. App.1998), *review denied* (Minn. Mar. 30, 1999).

Here, Wilhite received a letter headed "TERMINATION OF SECTION 8 ASSISTANCE," which clearly stated that federal regulations require the termination of Section 8 program assistance for a family evicted from housing for a serious lease violation. The letter also stated that the termination of Wilhite's Section 8 Rental Assistance was due to the court-ordered eviction dated July 24, 2007. The letter

---

1. The HRA also contends that we should not reach the merits of Wilhite's second and third points of error because they were not presented before the HRA. The HRA's argument is without merit. The HRA does not have the authority to hear constitutional challenges; therefore, Wilhite may raise them for the first time on appeal. *Neeland v. Clearwater Mem'l Hosp.*, 257 N.W.2d 366, 368 (Minn.1977). We address them here in sections II. and III.

informed Wilhite of the statutory authority supporting the termination, explained her right to appeal the HRA's decision, and advised her of the manner in which the appeal must be filed and the timeline for doing so. Moreover, on several occasions prior to the eviction, Wilhite had received warnings from both Evergreen Heights and the HRA that any eviction for a serious lease violation would result in the termination of her Section 8 benefits. Given the amount of information that Wilhite had been provided by the time of the termination, the termination-of-benefits notice sent by the HRA to Wilhite meets the above requirements.

In addition, Wilhite's contention that the termination-of-benefits notice was insufficient because it did not list past lease violations is flawed for two reasons. First, the HRA is not required to give a detailed explanation of all the reasons for the termination; the notice must contain only a brief explanation for the termination and effectively communicate the interest at stake. This requirement is met without mention of the past lease violations. Second, the HRA's decision to terminate Wilhite's Section 8 benefits was not based on her past lease violations. Horner testified at the informal hearing that the information regarding past lease violations was "just more for reference," and the HRA would not have taken action to terminate Wilhite's Section 8 benefits had she simply

vacated the premises at the expiration of the lease.[2]

Because the HRA's notice to Wilhite was adequate under the applicable statutory and constitutional requirements, Wilhite was not denied due process.

## III.

Finally, Wilhite argues that the HRA violated her constitutional rights, maintaining that she was not permitted to confront and cross-examine her landlord or townhouse manager. The HRA counters that Wilhite's constitutional rights were not violated because the HRA did not call the landlord or the townhouse manager as witnesses.

When Wilhite made a timely request for an informal hearing, Wilhite was entitled to "the opportunity to examine [and copy] . . . any [HRA] documents that are directly relevant to the hearing," and "the opportunity to present evidence, and may question any witnesses." 24 C.F.R. § 982.555(e)(2)(i), (e)(5) (2008). Wilhite also is constitutionally guaranteed the right to "confront and cross-examine the witnesses relied on by the [HRA]." *Goldberg v. Kelly*, 397 U.S. 254, 270, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970). Whether Wilhite was denied her constitutional right to confront and cross-examine witnesses is a question of law, which we

---

**2.** The hearing officer concluded that "a preponderance of evidence supports the fact that Barbara Wilhite did in fact seriously and repeatedly violate a provision of her lease on numerous occasions as noted above and this led to a court-ordered eviction. . . ." But we observe that the findings of fact state that "had Ms. Wilhite moved from her assisted unit in response to the non-renewal notice she received and had no eviction action been filed the HRA would not have taken a termination action against her." The district court's eviction order clearly indicates that the sole

ground for eviction was Wilhite's failure to vacate after the expiration of the lease. The undisputed testimony before the hearing officer was that the sole reason for Wilhite's eviction and resulting termination of Section 8 benefits was Wilhite's failure to vacate the premises. There is no evidence to support a conclusion that the previous lease violations were the basis for the HRA's termination decision. Thus, we conclude that the HRA was not constitutionally required to provide to Wilhite a notice listing previous lease violations.

review de novo. *Bondy v. Allen,* 635 N.W.2d 244, 249 (Minn.App.2001).

Wilhite initially asserts she was unable to confront and cross-examine her landlord or townhouse manager at the July 24, 2007 eviction hearing before the Scott County district court. But Wilhite did not appeal the eviction order, nor do we have a record of the July 24 eviction proceedings, thus this issue is not properly before us. However, Wilhite makes the same claim regarding the August 24, 2007 informal hearing contesting the termination of her Section 8 benefits. At this hearing, the HRA did not call either the landlord or the townhouse manager to testify. The only testimony presented by the HRA to the hearing officer was that of Horner. During the informal hearing, Wilhite and her counsel had the opportunity to interject during Horner's testimony and had the opportunity to present evidence and rebut Horner's testimony during their case-in-chief. Although *Goldberg* guarantees the right to confront and cross-examine witnesses, *Goldberg* does not mandate the HRA to call witnesses only to enable Wilhite to cross-examine them. Accordingly, Wilhite's constitutional right to confront and cross-examine witnesses at the informal hearing was not violated.

## DECISION

The HRA met its burden of proving by substantial evidence that Wilhite's failure to vacate the leased premises at the expiration of her lease constituted a serious lease violation under 24 C.F.R. § 982.552(b)(2), mandating the termination of her Section 8 Rental Assistance. There is no merit in Wilhite's claims that her constitutional rights were violated by either a deficient notice or an inability to cross-examine witnesses.

**Affirmed.**