*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0810**

In the Matter of the Appeal of the Termination of Angela Gibson's lease
under the Family Affordable Housing Program and
her Project Based Voucher Rent Assistance.

**Filed May 13, 2024**
**Affirmed**
**Kirk, Judge**[*]

Metropolitan Housing and Redevelopment Authority

Angela Gibson, Coon Rapids, Minnesota (pro se relator)

Mary G. Dobbins, Landrum Dobbins, L.L.C., Edina, Minnesota (for respondent agency)

Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Kirk, Judge.

**NONPRECEDENTIAL OPINION**

**KIRK**, Judge

In this certiorari appeal, relator challenges the termination of her Section 8 rental assistance and lease. Because the termination is supported by substantial evidence and relator does not identify procedural defects in the proceedings upholding the termination, we affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Relator Angela Gibson contests the termination of her Section 8 rental assistance and lease by respondent Metropolitan Housing and Redevelopment Authority (Metro HRA). Since December 2015, Gibson has leased one of Metro HRA's units, receiving rental assistance. Under the lease, Gibson's tenant obligations included "permit[ing] the Property Manager, the Owner, and repair and maintenance personnel reasonable access to the Dwelling Unit . . . for the purpose of: performing repair or maintenance work or making necessary improvements." The lease provided that it could be terminated should the tenant fail to fulfill tenant obligations. Gibson also signed a statement of responsibilities for rental assistance, which provided that her rental assistance would be terminated if she "committed any serious or repeated lease violations."

During her lease, Gibson had a contentious relationship with Metro HRA related to the maintenance of her unit. Some of the issues included Gibson's many maintenance and appliance-replacement requests, refusals to allow access to her unit to complete repairs or maintenance, negativity towards contractors and vendors, and a rent escrow action.

The final incident triggering the termination of Gibson's lease and rental assistance related to Gibson's refusal to allow access to her unit to replace a furnace. Gibson's furnace stopped working on January 20, 2023, around 10 p.m., requiring an emergency, temporary repair. Metro HRA sought to replace the furnace on January 26 and 27. Gibson, however, refused to allow access to the unit to install the new furnace. Gibson informed Metro HRA that she would not allow access to install the furnace—a process that would take about four to six hours—unless Metro HRA paid for her to stay in a hotel.

2

On January 30, Metro HRA told Gibson that it would not pay for a hotel during the replacement of the furnace and attempted to schedule a date for the installation. Gibson again refused to cooperate with scheduling a day to replace the furnace or allow access to her unit. The next day, Metro HRA sent Gibson a notice that she had violated the section of her lease requiring reasonable access to her unit. Gibson continued to refuse access to complete the installation of the furnace.

On February 10, Metro HRA sent Gibson a letter stating that the furnace replacement was scheduled for February 15 at 9:00 a.m. The letter stated that "[r]eliable heating is an absolute necessity in winter in Minnesota for comfort, safety, and the protection of property" and that, if she did not permit the installation, her lease would be terminated. Gibson refused to allow access to her unit on February 15.

Metro HRA terminated Gibson's rental assistance and lease because of her failure to allow reasonable access to her unit to make repairs. Gibson requested an informal hearing to challenge the termination of her rental assistance and lease. Prior to the hearing, Metro HRA emailed Gibson its exhibits. Gibson failed to timely submit her exhibits to Metro HRA.

At the April 20 virtual hearing, Gibson alleged that the termination of her rental assistance and lease was retaliation for a rent escrow action that she filed against Metro HRA. She did not dispute that she prevented Metro HRA from accessing her unit to install the furnace or that she previously prevented Metro HRA from accessing her unit to complete repairs.

3

Two days later, the hearing officer issued an order upholding the termination of Gibson's rental assistance and lease. The hearing officer determined that Metro HRA met its burden to show that Gibson violated her lease by failing to allow reasonable access for repairs on multiple occasions. The hearing officer also reviewed Gibson's untimely exhibits and found that Gibson was not prejudiced by their exclusion.

Gibson requested reconsideration of the decision based on the exhibits she submitted. Metro HRA also requested that the hearing be reopened to allow additional testimony. At an in-person hearing on May 11, the hearing officer informed Gibson that, based on both parties' requests, the hearing would be reopened to allow the submission of additional evidence and hear additional testimony. Gibson said that she wanted only reconsideration of her submitted exhibits and left the hearing early.

Following the hearing, the hearing officer issued an order denying Gibson's request to reconsider her exhibits. The hearing officer affirmed that Metro HRA met its burden to prove that Gibson failed to allow reasonable access to her unit to perform maintenance and repairs on multiple occasions and found that Metro HRA did not terminate her benefits or lease in retaliation for Gibson's rent escrow actions.

Gibson appeals by writ of certiorari.

## DECISION

Gibson argues that the hearing officer erred in upholding Metro HRA's decision to terminate her rental assistance and lease. When a public housing authority receives evidence, hears testimony, and makes a decision, it acts in a quasi-judicial capacity. *Carter v. Olmsted Cnty. Hous. & Redev. Auth.*, 574 N.W.2d 725, 729 (Minn. App. 1998). Our

4

review of a quasi-judicial decision not subject to the Minnesota Administrative Procedure Act is limited to questions affecting jurisdiction, the regularity of the proceedings, and whether the decision "was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn. 1992) (quotation omitted). We will uphold a housing authority's decision unless it is "unconstitutional, outside the agency's jurisdiction, procedurally defective, based on an erroneous legal theory, unsupported by substantial evidence, or arbitrary and capricious." *Wilhite v. Scott Cnty. Hous. & Redev. Auth.*, 759 N.W.2d 252, 255 (Minn. App. 2009) (quotation omitted). "We examine the findings to determine whether they support the decision but do not retry facts or challenge the credibility determinations of the agency." *Id.*

Under the applicable federal regulations, Metro HRA could terminate Gibson's lease and Section 8 rental assistance if she committed serious or repeated violations of her lease. *See* 24 C.F.R. §§ 982.551(e), .552 (2022) (termination of rental assistance); *Fairmont Hous. & Redev. Auth. v. Winter*, 969 N.W.2d 839, 849 (Minn. App. 2021) (termination of lease). The hearing officer found that Gibson committed serious or repeated lease violations by refusing to allow access to her unit for repairs and maintenance on multiple occasions.

Gibson first asserts that the record does not suggest she "hindered access with repairs," and thus argues that the hearing officer's findings were unsupported by substantial evidence. "[A] substantial-evidence analysis requires us to determine whether the agency has adequately explained how it derived its conclusion and whether that conclusion is

reasonable on the basis of the record." *In re NorthMet Project Permit to Mine Application Dated Dec. 2017*, 959 N.W.2d 731, 749 (Minn. 2021) (quotation omitted). And "if the ruling by the agency decision-maker is supported by substantial evidence, it must be affirmed." *Id.* (quotation omitted).

Contrary to Gibson's assertion, the record contains extensive documentation supporting the hearing officer's finding that Gibson refused to allow reasonable access to her unit on multiple occasions. Both Metro HRA and the vendor attempted to schedule a time to install the furnace on multiple days, and Gibson refused to cooperate with scheduling or allow access to her unit. And the Metro HRA director testified that "[t]he installation of a new furnace is a reasonable and necessary repair," that it was "particularly urgent" because the current furnace might fail during winter, and "[a] failure of a furnace could cause significant damage to the structure and the unit." Metro HRA also submitted documentation about Gibson's prior refusals to allow access to her unit to complete repairs, including refusing to allow access to repair a significant leak. Although Gibson asserts that Metro HRA's termination was instead retaliation for her rent escrow action, such an inference would require this court to reweigh the evidence and ignore the hearing officer's credibility determination. We may not do so. *See Wilhite*, 759 N.W.2d at 255. We therefore conclude that substantial evidence supported the hearing officer's decision to affirm the termination of Gibson's lease and rental assistance.

Finally, Gibson contends that the termination was procedurally defective because the hearing officer should have rescheduled the virtual hearing for an in-person hearing and Gibson did not have enough time to review the evidence. But the federal regulations

6

governing informal hearings do not require that a hearing be conducted in person, *see* 24 C.F.R. § 982.555(a)(1)(iv) (2022), and there is no record that Gibson objected to the virtual meeting or requested an in-person hearing. Likewise, the regulations required that Gibson "be given the opportunity to examine" any documents prior to the hearing, *see id.* (e)(2)(i) (2022), and Metro HRA emailed its exhibits to her on April 4—well before the April 20 hearing. Then, during the April 20 virtual hearing, Gibson acknowledged she received Metro HRA's evidence and questioned the Metro HRA director. And when the hearing officer held an in-person hearing following Gibson's and Metro HRA's requests, Gibson declined to provide additional evidence or testimony and left the hearing early. We discern no procedural defects related to the termination of Gibson's lease and rental assistance.

**Affirmed.**