*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0159**

Pamela Beidel,
Relator,

vs.

Corporate Commission of Mille Lacs Band of Ojibwe Indians
- Grand Casino Hinckley,
Respondent,

Department of Employment and Economic Development,
Respondent

**Filed October 27, 2014
Affirmed
Worke, Judge**

Department of Employment and Economic Development
File No. 31680128-3

Timothy H. Baland, Anoka, Minnesota (for relator)

Corporate Commission of Mille Lacs Band of Ojibwe Indians – Grand Casino Hinckley,
Hinckley, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul,
Minnesota (for respondent department)

Considered and decided by Rodenberg, Presiding Judge; Worke, Judge; and Kirk,

Judge.

**WORKE**, Judge

Relator challenges the unemployment-law judge's (ULJ) decision that she was discharged for employment misconduct and ineligible for unemployment benefits, arguing that she did not engage in misconduct and that a portion of the Minnesota Unemployment Insurance Law is unconstitutional. We affirm the ULJ's decision and conclude that relator's constitutional challenge fails.

**FACTS**

Relator Pamela Beidel worked as a cashier at respondent Corporate Commission of Mille Lacs Band of Ojibwe Indians – Grand Casino Hinckley (GCH). She was responsible for collecting chips, coins, and tickets from guests and redeeming those items for currency. GCH trains its cashiers to adhere to specific practices. Cashiers are required to count chips (or coins or tickets) twice and to count money thrice, twice to themselves and a third time out loud to the customer receiving the cash. Cashiers are also required to "clear their hands" before and after a transaction, which involves placing their hands palm-up for security cameras. This is done to show that the cashier is not holding any money before reaching into the cash drawer and to ensure no money is left over after a transaction.

At the end of each shift, cashiers are required to count their cash drawer and record any discrepancy between the expected amount of money in the cash drawer and the actual amount. Any amount over or under the expected amount is a "variance." GCH has a written variance policy which requires that any variance of more than five dollars

after an eight-hour shift be recorded. Recorded variances are accumulated on a rolling 90-day and 12-month basis. As a cashier's variance total increases past certain thresholds, she is subject to disciplinary measures, such as written warnings, retraining, suspension, and termination.

Beidel was discharged from employment after her variance total from September 27, 2012 to September 27, 2013 exceeded $1,000, a threshold specified in GCH's policy. During this one-year period, Beidel received 10 written warnings due to variances. She underwent mandatory retraining in April 2013 and received a one-day suspension in May 2013.

Following a telephone hearing, the ULJ determined that Beidel was discharged due to misconduct and ineligible for unemployment benefits. The ULJ stated that Beidel had been negligent in failing to adhere to GCH's policies, and that her failure demonstrated a substantial lack of concern for her employment. Beidel requested reconsideration, submitting documentation related to her fibromyalgia and other medical conditions because she had claimed during the hearing that these issues affected her ability to perform her job duties. While determining that Beidel had no reason for failing to provide this documentation at the hearing, the ULJ also concluded that the information would not have affected the outcome of the decision.

This certiorari appeal follows.

**D E C I S I O N**

*Employment misconduct*

Beidel challenges the ULJ's conclusion that she engaged in employment misconduct and is ineligible for unemployment benefits.

This court may remand, reverse, or modify the decision of a ULJ if the substantial rights of the relator may have been prejudiced because the findings, conclusion, or decision are in violation of constitutional provisions or unsupported by substantial evidence. 2014 Minn. Laws ch. 271, art. 1, § 1, at 1028-29 (to be codified at Minn. Stat. § 268.105, subd. 7(d)(1), (5) (2014)).

An employee discharged because of misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4 (2012). Misconduct is "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2012).

"Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg v. Vintage Place, Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). "Whether the employee committed a particular act is a fact question, which we review in the light most favorable to the decision and will affirm if supported by substantial evidence." *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011). But whether a particular act amounts to disqualifying misconduct is a question of law, reviewed de novo. *Stagg*, 796 N.W.2d at 315.

4

The ULJ decided that Beidel's failure to adhere to GCH's cash-handling and counting policies amounted to employment misconduct. "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

During the hearing, Beidel attributed her variances to stress and her fibromyalgia. She asserted that the job is high stress due to customers concerned about money. She also described how fibromyalgia negatively affected her ability to perform her job duties. The ULJ determined that these stressors were not the cause of the variances, finding Beidel's testimony not credible. *See Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006) (stating that we defer to the ULJ's credibility determination).

The ULJ concluded that it was "more likely than not that [Beidel's] variances were due to her failure to follow policy." Beidel was aware of GCH's policies and stated that she adhered to them "[m]ost of the time." She admitted, however, that the variances could have resulted from her not "paying attention to what [she] was doing." GCH chronicled Beidel's policy violations. Beidel received 10 written counseling notices within the one-year period in question that resulted from variances. While GCH assisted Beidel with retraining and a cashier refresher class, the surveillance team observing Beidel's work performance noted that she did not always follow procedure. In sum, the record supports the ULJ's factual finding that Beidel's variances were caused by her failure to adhere to GCH's policies.

Beidel, as an employee responsible for cash, owed a duty to GCH to strictly adhere to cash-handling policies. *See McDonald v. PDQ*, 341 N.W.2d 892, 893 (Minn.

5

App. 1984) (stating that employers rightfully expect "scrupulous adherence" to cash-handling policies). Beidel, in the absence of any credited justification, breached that duty. The ULJ correctly concluded that Beidel's failure to follow policy was "a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee" and demonstrated "a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a).

### *Second evidentiary hearing*

Beidel next argues that the ULJ erred by not ordering another evidentiary hearing based upon new evidence submitted with her reconsideration request.

A ULJ "must order an additional hearing if a party shows that evidence which was not submitted at the hearing . . . would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence." Minn. Laws ch. 251, art. 2, §16, at 864 (to be codified at Minn. Stat. § 268.105, subd. 2(c) (2014)). "This court will not reverse a ULJ's decision to deny an additional evidentiary hearing unless the decision constitutes an abuse of discretion." *Kelly v. Ambassador Press, Inc.*, 792 N.W.2d 103, 104 (Minn. App. 2010).

The ULJ considered Beidel's new evidence and determined that it would not alter the original decision. The ULJ originally considered that Beidel experienced stress at work, but stated that this stress did not cause Beidel's variances. The new evidence established only the existence of Beidel's fibromyalgia and medications; it did not demonstrate that they caused her variances. In denying an additional hearing, ULJ stated that Beidel's new evidence failed to show that her medical conditions or medications

6

"would cause her to lose cognitive functioning to such a degree that it would prevent her from being able to count the money and chips she exchanged with guests." Because the new evidence would not change the original decision, the first statutory requirement is not satisfied.

Beidel also fails the second statutory requirement, for two reasons. First, when Beidel submitted her new evidence she offered no reason as to why she did not provide it at the original hearing. Beidel testified about her fibromyalgia and how a doctor informed her that her condition would affect her ability to concentrate. Thus, the ULJ considered this evidence. Additionally, Beidel's new evidence related to her medications dates back to early 2013, well before the original hearing date, making it available to Beidel at that time. We cannot say that the ULJ abused his discretion when he simply noted that Beidel had offered no explanation.

Second, the only justifications now offered by Beidel on appeal are that she (1) was not represented by an attorney at the time of the evidentiary hearing, (2) thought her testimony would suffice, and (3) did not realize the importance of presenting evidence on all contested issues. Beidel does not cite a single legal authority supporting that these items constitute good cause. Beidel's argument is an expression of regret, but lacks any legal force.

*Constitutional challenge*

Finally, Beidel challenges as unconstitutional the statutory requirement that "[a] request for reconsideration must be decided by the [ULJ] who issued the [original]

7

decision." Minn. Laws ch. 251, art. 2, §16, at 865 (to be codified at Minn. Stat. § 268.105, subd. 2(e) (2014)).

"Minnesota statutes are presumed constitutional. The party challenging the constitutionality of a statute must establish that the statute violates the constitution beyond a reasonable doubt. This court will exercise its power to declare a statute unconstitutional only with extreme caution and when absolutely necessary." *Haugen v. Superior Dev., Inc.*, 819 N.W.2d 715, 720-21 (Minn. App. 2012) (citations omitted).

Beidel argues that requiring the same ULJ to both issue a decision and reconsider that decision violates her due process rights. "Unemployment benefits are an entitlement protected by the constitutional right to procedural due process." *Godbout v. Dep't of Emp't & Econ. Dev.*, 827 N.W.2d 799, 802 (Minn. App. 2013). When government action deprives an individual of a protected interest, the adequacy of the procedures used is measured by a three-factor balancing test which considers:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976)). At minimum, the procedures used "must provide an individual with notice and 'an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Mathews*, 424 U.S. at 333, 96 S. Ct. at 902).

8

Beidel cannot meet the high burden required to successfully attack the constitutionality of a statute. First, Beidel does not cite a single case or legal authority which suggests that reconsideration by the ULJ who decided the original case amounts to fundamental unfairness that denies due process. Beidel fails to persuasively distinguish commonplace similar procedures, such as filing a petition for postconviction relief with the sentencing district court. Beidel highlights in her reply brief that the Social Security Administration's review process uses a staff member who was not involved in the original decision. But Beidel simply points to a procedure different than that employed by DEED; she does not explain why the Social Security Administration chose the particular procedure it employs.

Next, Beidel concedes that she does not argue that the evidentiary hearing was unfair or violated her right to due process. Thus, Beidel is essentially seeking a second layer of due process protection; she had one satisfactory hearing, but contends that more is required. Due process is typically satisfied when an individual is provided with notice and a meaningful opportunity to be heard prior to deprivation of a protected interest. *Id.* These requirements were fulfilled at the first evidentiary hearing.

Given Beidel's concession that the original hearing was fair and her failure to support her assertion of subsequent unfairness with any legal authority, Beidel fails to prove beyond a reasonable doubt that section 268.105, subdivision 2(e), is unconstitutional.

**Affirmed.**

9